of the opinion that the decree in this court should be for the defendants, and for their costs; and that the petition should be dismissed and the injunction dissolved.

*Decree for appellees.*

BARNES and HORNBECK, JJ., concur.

THE VINEWOOD REALTY CO. ET AL., APPELLANTS, *v.* VILLAGE OF WILLOWICK ET AL., APPELLEES.

(No. 416—Decided December 18, 1941.)

*Messrs. David & Young,* for appellants.
*Messrs. Squire, Sanders & Dempsey,* for appellees.

PHILLIPS, J.   Plaintiffs, The Vinewood Realty Company and The Cleveland Trust Company, trustee, hereinafter referred to as the realty company and the trustee, appeal on questions of law from an adverse judgment of the Court of Common Pleas of Lake county in their action against defendants, The Vinewood Land Company, The Cleveland Trust Company, the village of Willowick, and its clerk, herein called the land company, the trust company, the village and the clerk, respectively, and against the recorder, treasurer and auditor of Lake county, herein designated as such, to enjoin the enforcement of liens and collection of assessments for special improvements allegedly appearing on the records of the recorder against their real estate situated in the village, to cancel same, to quiet their title thereto, and for a mandatory injunction ordering defendants to remove certain memorials placed on such lands from the master certificate of title thereof.

Plaintiffs alleged, and the evidence disclosed, that the involved lands were registered in accordance with the provisions of Section 8572-1 *et seq.,* General Code, commonly known as the Torrens Act; that no copies of the ordinances authorizing and directing the special improvements and no registration of the liens of the assessments were filed and noted in the recorder's office as required by Section 8572-56, General Code (115 Ohio Laws, 447; repealed, 117 Ohio Laws, 479), until May 26, 1936, nearly seven years after such assessments were levied; that on April 1, 1922, the realty company, which held the fee simple title to the lands involved, executed a ninety-nine year, renewable forever, lease thereon to the land company, which con-

tained an option to purchase by the latter; that several months thereafter the realty company conveyed its reversionary estate therein to the trustee, under a present existing agreement whereby the trust company became trustee and the realty company the beneficial owner thereof, subject to the before-mentioned lease.

By answer the land company alleged, and the evidence disclosed, that its corporate charter was cancelled by the state; that it forfeited and surrendered its ninety-nine year lease because of default in the payment of rent, taxes, advances, and other conditions and obligations required under its terms; that it held no directors' meetings nor performed any corporate functions after August 4, 1930, since which time possession of the lands in issue was in the trustee and the realty company.

Defendants answered, and alleged, that the plaintiffs were estopped from relying upon Section 8572-56, General Code, by their conduct, inactivity and acquiescence, and denied that plaintiffs' interest in the lands were ever registered under the Torrens Act. However the latter feature of the case was determined in the case of *Vinewood Realty Co.* v. *Village of Willowick*, 136 Ohio St., 257, 25 N. E. (2d), 345, and is not here involved.

By a pleading designated an answer defendant, city of Willowick, set up its lien.

The evidence disclosed that the land company, lessee, entered into an agreement with the village and contributed $9,713 toward the pavement improvement, which it requested the village to undertake, and by an executive officer signed, and agreed to procure others to sign, the formal petitions presented to the village which contained a request to it to make the improvements and an express promise by the petitioners to pay all installments of the special assessments levied

against their properties for the cost thereof; that it promoted the improvements, participated therein, and received the benefits thereof with full knowledge of same, and without repudiating the acts of its officers; that the petitions which were circulated late in the year 1927 were signed by more than sixty per cent of the owners of the involved lands; that in accordance therewith on January 8, 1928, the village council gave its ordinance of necessity numbered 181 its first, second and third readings, and thereafter passed the enabling ordinances, and thereupon proceeded to and did install storm sewers, sanitary sewers, water house connections, paving, and various and sundry other improvements.

The Court of Common Pleas found that the special assessments levied by three ordinances and reassessed by ordinance 462 were of such a nature that the realty and land companies were estopped to deny that they constituted valid and subsisting liens against the involved lands and refused to order the memorials to those lots expunged from records to which reference has been made.

It is the law of this case that the registration proceedings registered both the leasehold of the land company and the reversion of the trust company. See *Realty Co.* v. *Willowick, supra.*

Defendants concede "that in the absence of an equitable estoppel the trust company (presumably herein referred to as the trustee) would be entitled to relief," but contend that "The Vinewood Realty Company has no possible standing in this law suit," and that both the land company and the trust company are estopped in equity to assert that the clerk of the village filed notices of the assessing ordinances more than a reasonable time after their enactment and are estopped to maintain this action in equity to remove

the memorial of the lien of the special assessments from the certificate of title covering the lands.

It appears from the record that the petitions for the sanitary sewer were lost and accordingly could not be introduced in evidence, but that the clerk testified from his recollection that petitions for such improvement signed by the land company were presented to village council, but could not testify how many signatures were on the petition for the sanitary sewer.

"In the absence of evidence to the contrary, the law indulges a *prima facie* presumption in favor of the validity of the proceedings of a municipal council. Under this rule, where action has been taken pursuant to a petition, it will be presumed, in the absence of evidence to the contrary, that the petition was sufficient." 28 Ohio Jurisprudence, 294, Section 169.

See, also, *Shalersville Bd. of Edn.* v. *Horner,* 55 Ohio App., 356, 9 N. E. (2d), 918; *Tone* v. *Columbus,* 39 Ohio St., 281; *Ireton Brothers* v. *Traction Co.,* 2 N. P. (N. S.), 317, 15 O. D. (N. P.), 129; 44 Corpus Juris, 233, Section 2388.

As a result of a careful review of the evidence submitted to us on this phase of this case and on plaintiffs' claim that the petitions were not sufficient in law to authorize the village to proceed thereon, reference to which has heretofore been made in part, and further reference to which need not be made, we cannot say that the finding of the lower court that a sufficient percentage of property owners signed the petition, or that land company's executive officer acted without authority in signing them, is against the manifest weight of the evidence.

The duty imposed upon the clerk to promptly file the notice and list of the involved lands with the recorder was mandatory and failure so to do relieved the involved lands from liability for such assessments in the absence of estoppel.

"1. The authority to levy special assessments for local improvements is conferred only by statute and the validity of such assessments is conditioned upon compliance with the requirements of these statutes.

"2. Under the provisions of Section 8572-56, General Code (prior to its repeal effective August 18, 1937), it was essential that a notice of the passage of an ordinance or resolution providing for a public improvement, the expense of which was to be levied on real estate, and a list of the lands assessed or to be assessed be promptly filed with the county recorder as a prerequisite to the imposition of a valid assessment lien upon lands registered under the Torrens Act.

"3. A lien cannot be created upon lands registered under the Torrens Act by filing with the recorder notice of the passage of legislation for a local improvement seven years subsequent to the enactment of such legislation." *Curry et al., Bd. of Commrs. of Cuyahoga County*, v. *Lybarger, Recorder*, 133 Ohio St., 55, 11 N. E. (2d), 873.

If defendant land company were seeking affirmative relief here it is clear to us that under the doctrine of equitable estoppel and the evidence that it would be estopped to maintain this action in a court of chancery. See *Amrich* v. *Boyle, Treas.*, 136 Ohio St., 325, 25 N. E. (2d), 850, where it is said:

"Upon the threshold of the consideration of this cause we are met with the age-old maxim that he who seeks equity must do equity. This cause presents a question of equitable estoppel. The Torrens Land Registration Act is not a system designed to notify the owner himself of any liens or other encumbrances. Rather it is a system for notifying third parties. It is not claimed by defendants that these special assessments may be collected from innocent purchasers of the properties or even mortgagees thereof. It is con-

ceded that since there was no compliance with Section 8572-56, General Code, the assessments could not be enforced against third parties.

"But what about these plaintiffs who signed the petitions and requested the city to make the improvements? The improvements requested were pavements laid in front of and for the benefit of their own properties. It was their act that caused the required legislation by the city to be set in motion. May they now come into a court of equity to ask that the cost of improving their property, their streets, be shifted to other taxpayers by reason of the failure of the clerk of council to perform a duty designed not for their benefit but for the benefit of third parties—the world at large? Clearly not. To hold otherwise would be to misapply one of the most ancient and fundamental principles of equity."

The rights of innocent purchasers or mortgagees are not involved here.

Of course, since defendant land company is not seeking affirmative relief here the determination of that question is not decisive of this case.

The promotion of the improvements and the participation in the proceedings by the land company created an equitable estoppel against it, which also binds the reversion of realty company and The Cleveland Trust Company as trustee. Under the registration decree the perpetual leasehold became the estate in fee and the reversion became a lesser estate. See *Village of St. Bernard* v. *Kemper,* 60 Ohio St., 244, 54 N. E., 267, where it is said:

"In this state taxes and assessments are levied upon the corpus of real property, and not upon the titles by which the same may be held, unless otherwise provided by statute. * * *

"The rules of taxation are prescribed by the statutes,

and persons must make their contracts with reference thereto, and if the power is given to a lessee to deal with property as owner, to have it stand in his name for taxation, the lessor becomes bound by the acts of his lessee, and has no cause for complaint.''

The broad statement by the court in the *Kemper case,* where, as here, the lease involved was for ninety-nine years renewable forever, assumes that the lessor is bound by the acts of his lessee even though lessee agrees to the imposition of tax beyond the amount authorized by law.

It appears that the decision there was based squarely upon the proposition that lessor is in no position to complain under the circumstances even though lessee has bound the involved land with the payments of taxes or assessments beyond those authorized by law.

It follows from what we have said in this opinion that under the evidence, reference to which has been made elsewhere herein, the realty company is likewise estopped in equity to assert that the clerk of the village filed notices of the assessing ordinances more than a reasonable time after their enactment and is estopped to maintain this action in equity to remove the memorials of the lien of the special assessments from the certificate of title conveying the lands. See *Bernard* v. *Kemper, supra.*

The Cleveland Trust Company, as trustee, is also estopped because it appears from the trust agreement that it has no interest separable from that of the realty company.

The Cleveland Trust Company set forth by its answer its mortgage on the involved land. The lower court found the assessments and taxes superior to such lien, but no appeal was prosecuted from such finding.

It is apparent that neither plaintiff is entitled to

maintain this action, nor to the relief sought; that as against the plaintiffs the judgment of the lower court finding the assessments valid liens is not prejudicial, and accordingly the judgment of the lower court must be and is hereby affirmed.

*Judgment affirmed.*

NICHOLS, J., concurs.
CARTER, P. J., concurs in judgment.

CARTER, P. J., concurring. It is my conclusion that lessor, The Vinewood Realty Company, plaintiff herein, is estopped to maintain this action for the reason that lessee, The Vinewood Land Company, under its ninety-nine year lease, renewable forever, would be estopped from so maintaining this action were it seeking the same relief as plaintiff for the reason The Vinewood Land Company, lessee, participated in the securing of the improvements in question, as indicated in the above opinion.

The Cleveland Trust Company, trustee, plaintiff, under the trusteeship as disclosed by the record can not maintain this action, it acting in the capacity of trustee only.

The Cleveland Trust Company, mortgagee and defendant herein, has not prosecuted appeal from the finding of the lower court.

Neither innocent purchasers nor innocent mortgagees are involved. See *Amrich* v. *Boyle, Treas.*, 136 Ohio St., 325, 25 N. E. (2d), 850.